UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

ALLIE MALLAD, an individual,

    Plaintiff,

v.

JOHN WANGLER,
an individual,

    Defendant.

Case No. _____

Hon. _____

**Complaint and Jury Demand**

_____

Bernard J. Fuhs (P69621)
Brett A. Rendeiro (P64792)
Butzel Long, a professional corporation
Attorneys for Plaintiff
201 W. Big Beaver
Suite 1200
Troy, Michigan 48084
248.258.1616
fuhs@butzel.com
rendeiro@butzel.com

_____

**COMPLAINT**[1]

---

[1] Plaintiff discloses a pending arbitration before the American Arbitration Association in which Defendant Wangler, among others, has asserted claims against Plaintiff. However, none of the contractual agreements which form the basis of Plaintiff's claims in this matter include an agreement to arbitrate between Plaintiff and Defendant.

Plaintiff, Allie Mallad, by and through his counsel, Butzel Long, a professional corporation, for his Complaint against Defendant John Wangler, states as follows:

## PARTIES

1. Plaintiff Allie Mallad in an individual who is a citizen of the State of Florida.

2. Defendant John Wangler ("Defendant" or "Wangler") is an individual who is a citizen of the State of Michigan.

## JURISDICTION AND VENUE

3. The amount in controversy exceeds $75,000, exclusive of interest, costs and attorney's fees.

4. This matter involves citizens of different states, and accordingly, this Court has diversity jurisdiction pursuant to 28 U.S.C. §1332.

5. A civil action may be brought in a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located. 28 U.S.C. §1391(b).

6. Defendant resides within this judicial district, so venue is appropriate.

## GENERAL ALLEGATIONS

### A.     The Parties Formed Red Effect Ann Arbor, LLC

7.     In February 2018, Plaintiff and Defendant jointly formed Red Effect Ann Arbor, LLC ("REAA"), which is a Michigan limited liability company.

8.     REAA is a franchisee of Red Effect Holdings, LLC, which is the franchisor of Red Effect Infrared Fitness gyms (the "Red Effect Franchisor"). Red Effect Infrared Fitness gyms offer a unique, innovative approach to fitness, including group training classes which combine infrared therapy with heart-monitoring and high-intensity interval training.

9.     When Plaintiff and Defendant formed REAA, each of them held a fifty percent (50%) membership interest in the company.

10.    When the parties formed REAA, they executed an Operating Agreement, a copy of which is attached as **Exhibit A**.

11.    Defendant also executed a Subscription Agreement with REAA, pursuant to which he was obligated to pay $300,000 to REAA for his membership interest. Plaintiff is not a party to Defendant's Subscription Agreement.

12.    The parties also executed a promissory note in favor of the landlord from which REAA leased its location to operate its Red Effect Infrared Fitness gym in Ann Arbor, Michigan (the "Promissory Note").

13. In connection with the Promissory Note, Plaintiff and Defendant executed a Contribution Agreement, pursuant to which they each agreed to be fifty percent (50%) responsible for any payments made by either of them in connection with the Promissory Note (the "Contribution Agreement"). A copy of the Contribution Agreement is attached as **Exhibit B**.

**B. There Was Strong Interest In Red Effect Franchisor and REAA**

14. Plaintiff and his team worked tirelessly to grow the Red Effect Franchisor brand throughout 2018 and into early 2019. There was substantial interest nationally in the Red Effect Franchisor concept and the future looked very bright.

15. At the same time, REAA's franchisee gym was also growing and thriving. Gym memberships at the REAA franchisee location had grown to over 600 members. Plaintiff and Defendant were very enthusiastic about this success.

16. Similarly, interest was growing in Stretch Smart Holdings, LLC throughout 2018 and into 2019. Stretch Smart Holdings, LLC is the franchisor of Stretch Smart Infrared Therapy studios (the "Stretch Smart Franchisor"), which was formed by Plaintiff. Stretch Smart Infrared Therapy studios offer clients a revolutionary infrared therapy and a whole-body stretch approach.

### C. Defendant Invited His Friends To Purchase Membership Interests In REAA, Red Effect Franchisor and Stretch Smart Franchisor

17. Following the initial success of REAA franchisee's gym in Ann Arbor, Defendant actively invited several of his friends to purchase membership interests in REAA from Plaintiff and Defendant, including without limitation, Rich Hewlett ("Hewlett"), Lisa Evangelista ("Evangelista"), and Les and Kathy Miles ("the Miles").

18. In addition, Defendant invited some of his friends to purchase a membership interest in Red Effect Franchisor from Plaintiff, including without limitation, Hewlett, Evangelista, the Miles, Matt Mirchin ("Mirchin") and John Hunt ("Hunt").

19. Defendant also invited some of his friends to purchase a membership interest in Stretch Smart Franchisor, including, without limitation, Mirchin and Hunt.

20. Mirchin ultimately purchased a one percent (1%) membership interest in Red Effect Franchisor from Plaintiff in January 2019 pursuant to the terms of a Membership Interest Purchase Agreement.

21. Mirchin also purchased a one percent (1%) membership interest in Stretch Smart Franchisor from Plaintiff in January 2019 pursuant to the terms of a separate Membership Purchase Agreement.

22. Hunt ultimately purchased a one percent (1%) membership interest in Red Effect Franchisor from Plaintiff in January 2019 pursuant to the terms of a Membership Interest Purchase Agreement.

23. Hunt also purchased a one percent (1%) membership interest in Stretch Smart Franchisor from Plaintiff in January 2019 pursuant to the terms of a separate Membership Purchase Agreement.

24. Evangelista ultimately purchased a five percent (5%) membership interest in REAA from Plaintiff and a five percent (5%) membership interest in REAA from Defendant in July 2019 through her wholly owned entity Bluerock Investments I, LLC ("Bluerock I") pursuant to the terms of a Membership Interest Purchase Agreement.

25. Hewlett ultimately purchased a five percent (5%) membership interest in REAA from Plaintiff and a five percent (5%) membership interest in REAA from Defendant in July 2019 through his wholly owned entity Bluerock Investments II, LLC ("Bluerock II") pursuant to the terms of a separate Membership Interest Purchase Agreement.

26. Evangelista also purchased a one-half percent (.5%) interest in Red Effect Franchisor from Plaintiff in July 2019 through Bluerock I pursuant to the terms of a separate Membership Interest Purchase Agreement.

27. Hewlett also purchased a one-half percent (.5%) interest in Red Effect Franchisor from Plaintiff in July 2019 through Bluerock II pursuant to the terms of a separate Membership Interest Purchase Agreement.

28. The Miles ultimately purchased a ten percent (10%) membership interest in REAA from Plaintiff and a ten percent (10%) membership interest in REAA from Defendant in July 2019 through their wholly owned entity Miles Fitness, LLC ("Miles Fitness") pursuant to the terms of a Membership Interest Purchase Agreement.

29. The Miles also purchased a one percent (1%) membership interest in Red Effect Franchisor from Plaintiff in July 2019 through Miles Fitness pursuant to the terms of a separate Membership Interest Purchase Agreement.

### D. The COVID-19 Pandemic Hits

30. Red Effect Franchisor and Stretch Smart Franchisor each continued to enjoy success in through 2019 and into early 2020.

31. Similarly, the REAA franchisee gym in Ann Arbor was growing at an impressive rate.

32. Then the COVID-19 pandemic hit the United States and almost immediately closed businesses across the country, including local gyms such as the REAA franchisee gym in Ann Arbor.

33. Amid economic uncertainties and health concerns, the membership rolls at the REAA franchisee gym in Ann Arbor plummeted.

34. Plaintiff and his team worked exhaustively to get the REAA franchisee gym in Ann Arbor re-opened as soon as state and local health orders permitted it to do so.

35. Plaintiff even put in an additional $147,500 in the REAA franchisee gym in Ann Arbor in an effort to keep the gym alive, a significant portion of which was used to pay the REAA franchisee lease obligations. Defendant also put in an additional $55,000 into REAA.

### E. REAA Members Reject Capital Call

36. Plaintiff approached the members of REAA in early 2021 about the need for additional capital contributions to keep the REAA franchisee gym in Ann Arbor open.

37. Hewlett and the Miles seemed to understand why additional capital was needed for the Ann Arbor franchisee gym, but Hewlett focused his efforts on attempting to re-negotiate how he purchased his membership units in REAA from Plaintiff and Defendant.

38. Hewlett essentially argued that he (and Evangelista and the Miles) should not have purchased the REAA membership units directly from Plaintiff and Defendant, but instead, they should have purchased the units from REAA so that

8

their purchase payments would have gone directly to their respective capital accounts for purposes of any capital call.

39. While attempting to re-negotiate the earlier membership unit purchase terms from Plaintiff and Defendant, Hewlett began serving extensive information requests on REAA and Red Effect Franchisor. Both entities responded to the information requests during the Summer of 2021.

**F. The REAA Franchisee Gym Is Forced To Close**

40. Both before and after Hewlett received responses to the information requests, the parties discussed the needed capital contributions for the REAA franchisee gym.

41. Hewlett, Evangelista and the Miles refused to make any capital contributions, so the REAA franchisee gym was forced to permanently close.

42. All of the REAA franchisee gym equipment was moved into storage and the REAA franchisee gym premises were returned to the landlord.

43. Plaintiff negotiated a resolution to the outstanding REAA lease obligation to the landlord, pursuant to which he is personally liable to pay a $100,000 lease termination payment to the landlord on behalf of REAA.

44. To Plaintiff's knowledge, Defendant did not pay anything to the REAA landlord in connection with the lease termination.

**G.     Defendant And Others Abruptly Filed Demand For Arbitration**

45.     The parties continued discussions about winding down REAA, including in early November 2021.

46.     Then, without any notice, Defendant (along with Bluerock I, Bluerock II, the Miles, Mirchin and Hunt, collectively the "Arbitration Claimants") filed a single Demand for Arbitration in late November 2021 claiming for the first time that Plaintiff (or some unidentified "agent(s)") promised and represented to each of them that each of their agreements concerning the purchase of their respective ownership interests in Red Effect Franchisor, Stretch Smart Franchisor and REAA were and would be the same as the agreements between Plaintiff and another individual (Harry "Arnie" Kander) and/or Defendant.

47.     The arbitration process is proceeding before the American Arbitration Association, subject to Plaintiff's objections, under Case No. 01-21-0017-4444.

**H.     Plaintiff Never Made The Alleged "Promises" or "Representations"**

48.     Plaintiff did not "promise" or "represent" to any of the Arbitration Claimants that their individual agreements to purchase membership units from him would be on the same terms as Kander and/or Defendant.

49.     Moreover, Plaintiff never authorized anyone to act as his "agent" or to make any promises or representations to any of the Arbitration Claimants on his behalf.

50. Upon information and belief, if anyone made any promises or representations to any of the Arbitration Claimants (and Plaintiff is not aware of any promises or representations), then Plaintiff believes that it was Defendant who made the alleged promises or representations to them.

## COUNT I - Breach of Contract

51. The allegations in the previous paragraphs are incorporated herein by reference.

52. To prevail on a claim for breach of contract, a plaintiff must establish: (1) the existence of a contract and its terms. (2) performance by the plaintiff, (3) breach of the contract by defendant, and (4) damages. *Green Leaf Nursery, Inc. v. Kmart Corp.*, 485 F.Supp.2d 815, 818 (E.D. Mich. 2007); *see also* 3A MICH. PLEADING & PRACTICE, *Evidence* §36:12 at 390-392 (2007) (breach of contract elements of proof).

53. Defendant entered into a valid and binding Contribution Agreement with Plaintiff, the terms of which are set forth in the Contribution Agreement attached as **Exhibit B**.

54. Since the formation of REAA with Defendant, Plaintiff has made, or is liable for making, payments to the REAA franchisee gym landlord in an amount in excess of One Hundred Fifty Thousand Dollars ($150,000.00) (the "Plaintiff Contributions").

55. Defendant has failed and/or refused to pay to Plaintiff his one-half share of the Plaintiff Contributions, the amount of which exceeds Seventy-Five Thousand Dollars ($75,000.00).

56. Plaintiff has been damaged by Defendant's refusal to pay his contractual fifty percent (50%) contribution amount to Plaintiff.

WHEREFORE, Plaintiff respectfully requests that the Court enter a Judgment in his favor and against Defendant in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), plus all attorney's fees, costs, interest and any other relief to which he is entitled.

## COUNT II – Contribution

57. The allegations in the previous paragraphs are incorporated herein by reference.

58. "The general rule of contribution is that one who is compelled to pay or satisfy the whole or to bear more than his aliquot share of the common burden or obligation, upon which several persons are equally liable or which they are bound to discharge, is entitled to contribution against the others to obtain from them payment of their respective shares." *Caldwell v. Fox*, 394 Mich. 401, 417 (Mich. 1975).

59. In the present matter, it would be inequitable for Plaintiff to be held liable in the arbitration for payments which Defendant received from Bluerock I,

Bluerock II and the Miles for their purchase of membership interests in REAA as it would result in a windfall to Defendant.

60. Further, it would be inequitable for Plaintiff to be held liable for any of the promises or representations alleged by the Arbitration Claimants for the reason that, upon information and belief, Defendant was the one who made the promises or representations to them (if any were made at all) without Plaintiff's knowledge or permission.

61. Further, it is inequitable for Plaintiff to have contributed One Hundred Ninety-Two Thousand Five Hundred Dollars ($192,500.00) more to REAA than Defendant.

62. For all of these reasons, Plaintiff is entitled to contribution from Defendant.

WHEREFORE, Plaintiff Allie Mallad respectfully requests entry of a Judgment in his favor and against Defendant in the amount of any arbitration award issued against Plaintiff plus Ninety-Six Thousand Two Hundred Fifty Dollars ($96,250.00 – one-half of the contributions made by Plaintiff to REAA in excess of Defendant's contributions) plus all attorney's fees, costs, interest and any other relief to which he is entitled.

                                Respectfully submitted,

                                Butzel Long, a professional corporation
                                Attorneys for Allie Mallad

Dated: January 10, 2022        By:  *Brett A. Rendeiro*
                                Bernard J. Fuhs (P69621)
                                Brett A. Rendeiro (P64792)
                                201 W. Big Beaver
                                Suite 1200
                                Troy, Michigan 48084
                                (248) 258-1312
                                fuhs@butzel.com
                                rendeiro@butzel.com

## **JURY DEMAND**

NOW COMES Plaintiff, Allie Mallad, by and through his counsel, Butzel Long, a professional corporation, and hereby demands a trial by jury for all claims so triable.

                                Respectfully submitted,

                                Butzel Long, a professional corporation
                                Attorneys for Allie Mallad

Dated: January 10, 2022        By:  *Brett A. Rendeiro*
                                Bernard J. Fuhs (P69621)
                                Brett A. Rendeiro (P64792)
                                201 W. Big Beaver
                                Suite 1200
                                Troy, Michigan 48084
                                (248) 258-1312
                                fuhs@butzel.com
                                rendeiro@butzel.com

3221237